agencies, the United Nations General Secretary, quasi public entities and persons

some of whom are transacting business here in SDNY. That Plaintiffs seek as a

replevin stolen property as well as damages and other relief, in which Petitioners

supports as a matter of protecting his  personal property rights along with those of a

class similarly situated however insufficiently represented by Plaintiffs.

The PACER Electronic docketing system reports that the proof of service of the

summons and complaint has not been filed yet, and no Defendants have made an

appearance yet. Further, the Court has set a preliminary conference date of March 15,

2012 as shown by Petitioner in his affidavit exhibit F.

## 2. FACTUAL BACKGROUND

Petitioner personal property rights along with those of a class similarly situated

however insufficiently represented by Plaintiffs in that the property held by Defendants

comprises all or part of a sinking fund set in reserve to repay Petitioner when the

Historic bonds are presented for redemption upon a reunited Mainland and Taiwan,

and that Petitioner contends that the theft and conversion of the securities

undermines and or wastes the reserves necessary for repayment.

To the extend that Plaintiffs have claim on  property that was issued as a

contractual agreement with the Government of Taiwan and Mainland China and the

Federal Reserve Bank of New York and it was not named as an interested party,

Petitioners does so along with the quasi government entity formed under the Foreign

Bondholders Act of 1933 (15 USC §77bb through §77hh with law) at the request of the

United States Secretary of State, the Secretary of the Treasury and the Chairman of

the Federal Trade Commission under President Franklin Roosevelt as a private, non-

profit corporation to protect the rights and interests of American holders of foreign

defaulted bonds applies herein to determine the status of the sinking fund. In addition

as a more convoluted wrinkle on whatever accounting is done requires any member of

the Sovereign Military Order of Malta (SMOM), of which several of the Defendants are

members, and or it associated organization including the New York Council on Foreign

Relations are to be restrained from performing the accounting with appointment of a

mutually acceptable special master by the Court paid by the funds associated with the

responsibility and duty of the Federal Reserve Bank of New York and Foreign

Bondholder Protective Council.

## ARGUMENT

### I. STANDARD FOR INTERVENTION

Under Fed. R. Civ. P. 24, a non-party may be allowed to intervene as a party in

an existing lawsuit, either as of right or by permission. Intervention as of right is

governed by Rule 24(a), which provides that, unless a right to intervene is

unconditionally granted by federal statute, a non-party has no right to intervene in a

case as a plaintiff or defendant unless it shows that (1) its motion to intervene was

timely filed, which this motion is; (2) it has an interest relating to the property or

transaction that is the subject of the action, which is satisfied; (3) it is so situated that

without intervention the disposition of the action may as a practical matter impair or

impede its ability to protect its interest, which is satisfactorily explained by Petitioner ;

and (4) its interest is not adequately represented by existing parties, in that necessary

parties have not been joined and in the case of the alleged two-side market platform

to be established in Switzerland would fall subject to the joint agreement between the

US and Switzerland as shown by Petitioner in the affidavit Exhibit C. *See* Fed. R. Civ.

P. 24(a); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).

"All four parts of the test must be satisfied to qualify for intervention as of right."

*Washington Elec. Coop., Inc. v. Massachusetts Municipal Wholesale Elec. Co.*, 922 F.2d

92, 96 (2d Cir. 1990); *accord D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir.

2001) ("Denial of the motion to intervene is proper if any of these requirements is not

met"); *United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987). "The moving party

has the burden of demonstrating its entitlement to intervene." *Seils v. Rochester City*

*Sch. Dist.*, 199 F.R.D. 506, 509 (W.D.N.Y. 2001).

     As for Permissive intervention is governed by Rule 24(b), which provides that,

unless a right to intervene is conditionally granted by federal statute, a court may not

exercise its discretion to permit a non-party to intervene in an action unless the non-

party shows that its "claim or defense . . . shares with the main action a common

question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The district court has broad

discretion to deny an applicant's motion for intervention under Rule 24(b)." *Seils*, 199

F.R.D. at 512 (citation omitted). In exercising this discretion, "the court shall consider

whether the intervention will unduly delay or prejudice the adjudication of the rights

of the original parties." Fed. R. Civ. P. 24(b)(3) – all of which Petitioner has done. The

Court also may consider "the nature and extent of the intervener's interests, whether

the intervener's participation will contribute to a just and equitable adjudication of the

issues, and whether the intervener's [interests] are adequately represented by the

parties of record." *Sharif v. New York State Educ. Dep't*, 709 F. Supp. 365, 369

(S.D.N.Y. 1989) (citation omitted); *Seils*, 199 F.R.D. at 513.

     The Supreme Court has not resolved the question 3/ whether a party seeking to

intervene under Rule 24(a) must satisfy the requirements of Article III of the

Constitution. *See Diamond v. Charles*, 476 U.S. 54, 68-69 (1986) (citing cases from

Courts of Appeals for the Seventh, Eighth, Ninth, and District of Columbia

Circuits). And the Second Circuit has held that a prospective intervener need not

satisfy Article III standing requirements merely to participate in district court

proceedings. *United States Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978). Nevertheless, an intervener's interest must "be direct, substantial, and legally protectable." *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992) (citation and quotation omitted). Petitioner has satisfied this requirement because he has more than a generalized interest in this matter that could be shared by any citizen. *Cf. Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974).

## II. STRUNK MAY INTERVENE AS OF RIGHT.

Petitioner has satisfied the first, second, third, or fourth requirements of Rule 24(a) for of right intervention. Because he must satisfy all four requirements to prevail, his motion must not be so denied. *See D'Amato*, 236 F.3d at 84; *United States v. New York*, 820 F.2d at 556.

## III. STRUNK PERMISSIVE INTERVENTION SHOULD NOT BE DENIED.

A court may not exercise its discretion to permit a non-party to intervene in an action unless the non-party shows that its "claim or defense . . . shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As elaborated in Part II and that Petitioner has articulated *a* legitimate, individualized claim of Defendants, and shares a common question of law or fact with this case. On this ground alone, his claim for permissive intervention must be granted.

Moreover, in exercising its broad discretion under Rule 24(b), a court considers "the nature and extent of the intervener's interests, . . . and whether the intervener's [interests] are adequately represented by the parties of record." *Sharif v. New York State Educ. Dep't*, 709 F. Supp. 365, 369 (S.D.N.Y. 1989) (citation omitted); *Seils,* 199 F.R.D. at 513. The arguments set forth in Part II with respect to why intervention as of right should be granted apply with equal force to permissive intervention: Petitioner's

interests,   are neither vague nor generalized, and collateral, and he has a specific basis to argue that those interests are not adequately represented by record parties.

Permissive intervention also implicates "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," Fed. R. Civ. P. 24(b)(3), or, put otherwise, "whether the intervener's participation will contribute to a just and equitable adjudication of the issues." *Sharif*, 709 F. Supp. at 369. Setting aside the arguments already made above, Petitioner's submission demonstrates why permissive intervention is conducive to a just and equitable adjudication of the important issues in this case. Petitioner's affidavit contains a good deal of material, pertinent matter that under the usual circumstances of the facts associated with this complaint is not scandalous or even out of the mainstream of current understanding of the record parties herein that under any other circumstance may be stricken under Fed. R. Civ. P. 12(f), as many of the factual allegations in the complaint taken as true support the Petitioner's affidavit, and in addition render inclusion wholly relevant and necessary issues before the Court. As for the role of the Sovereign Military Order of Malta and the Aragon Templars Petitioner possesses factual evidence and expert testimony that would aid the Court in its disposition of the legal issues before it.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to intervene as a Plaintiff in the case, whether as of right or by permission, should be granted along with other relief.

Dated: January 23, 2012
　　　　　Brooklyn New York

Christopher-Earl: Strunk in esse
Self-represented without an attorney
593 Vanderbilt Avenue – 281
Brooklyn, New York 11238
Phone – 845-901-6767
Email: chris@strunk.ws

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for
THE DRAGON FAMILY, citizens of foreign states,

**11-cv-8500 (RJH)**

Plaintiff,

**Christopher-Earl: Strunk**, in esse as a bondholder
593 Vanderbilt Avenue-281 Brooklyn New York 11238
Phone: 845-901-6767 and Email: chris@strunk.ws

**VERIFIED SUPPLEMENT**

**TO THE COMPLAINT**

Intervener-Plaintiff

-against-

DANIELE DAL BOSCO, a citizen of a foreign state,
THE OFFICE OF INTERNATIONAL TREASURY
CONTROL, a foreign corporation ("OITC"), RAY C.
DAM ("DAM"), individually, and as President of OITC,
DAVID A. SALE ("SALE"), individually, and as Deputy
Chief of the Council for the Cabinet of OITC, the UNITED
NATIONS, BAN KI-moon, individually, and as Secretary
General of the UN, H.E. Ambassador CESARE MARIA
RAGAGLINI, Individually, and as Permanent
Representative of the Italian Mission to the UN in New
York, H.E. Ambassador LAURA MIRACHIAN,
Individually, and as Permanent Representative of the Italian
Mission to the UN in Geneva, the ITALIAN REPUBLIC,
the ITALIAN FINANCIAL POLICE, Former Prime
Minister of Italy, SILVIO BERLUSCONI, THE WORLD
ECONOMIC FORUM ("WEF") a foreign corporation,
WORLD ECONOMIC FORUM U.S.A., INC.,
GIANCARLO BRUNO, individually, and as Head of the
Banking Industry of WEF, and various unknown individual
co-conspirators, JOHN DOES A-Z,

Defendants.

**FEDERAL RESERVE BANK OF NEW YORK,** 33 Liberty St.
New York, NY 10045 by **LEE C. BOLLINGER,** Chairman;
**FOREIGN BONDHOLDERS PROTECTIVE COUNCIL INC**,
90 Broad Street New York, NY 10004-2205 by
**JOHN R. PETTY** principal; JOHN and JANE DOES and
XYZ ENTITIES.

Supplement Defendants

----------------------------------------------------------------x

Intervener-Plaintiff, Christopher-Earl: Strunk, in esse (hereinafter, "Strunk"),
individually, and as an American Chinese Bond holder, self represented without an
attorney for his Supplement to the Complaint filed 11/23/11 herein, alleges of
supplement defendants and defendants as follows:

## JURISDICTION AND VENUE

1)    Jurisdiction exists for Intervention as of right pursuant to Federal Rules of Civil Procedure (FRCvP) Rule 24(a) (2) and or FRCvP Rule 24 (b) (1)(B) (2) (A) (B),  28 U.S.C. §1605(a)(2) (3) and (3) 22 USC §1643 [1]. The matter of the Supplement in controversy concerns the commercial activity of the Defendant in the United States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2)    Venue is proper in this District because Defendants are doing business in this District and are subject to the jurisdiction of this District; and Assignment of this action to the White Plains Division is appropriate because Defendants are doing business in Westchester County and Plaintiff's attorneys are located in Westchester County; and that Supplemental Defendants to respond are located for service and do business in Southern District of New York.

## SUPPLEMENTAL PARTIES

3)    **Intervener-Plaintiff Christopher-Earl: Strunk**, in esse, (herein after known as "Strunk", "Intervener-Plaintiff") is self-represented without being an attorney, and is an American bondholder of "Historic" Chinese Bonds; with place for service located at 593 Vanderbilt Avenue-281 Brooklyn New York 11238 Phone: 845-901-6767 and Email: chris@strunk.ws.

---

[1]  22 USC §1643 - It is the purpose of this subchapter to provide for the determination of the amount and validity of claims against  ... the Chinese Communist regime, which have arisen since January 1, 1959, ... since October 1, 1949, in the case of claims against the Chinese Communist regime, out of nationalization, expropriation, intervention, or other takings of, or special measures directed against, property of nationals of the United States, and claims for disability or death of nationals of the United States arising out of violations of international law by ... the Chinese Communist regime, in order to obtain information concerning the total amount of such claims against ...the Chinese Communist regime, on behalf of nationals of the United States. This subchapter shall not be construed as authorizing an appropriation or as any intention to authorize an appropriation for the purpose of paying such claims.

4)   That Strunk is the bearer of unredeemed "Historic" Chinese Bond property effected by the failure of the Mainland Peoples Republic of China (PRC ) to re-unite with the Republic of China (ROC) also known as Taiwan; and that Strunk owns ONE (1) £20 *CHINESE GOVERNMENT FIVE PER CENT REORGANIZATION GOLD LOAN OF 1913 FOR £25,000,000 STERLING* with serial number 411339 (see **Exhibit 1**) (herein after known as "*£20 Bond*"), and ONE (1) $20 *NATIONAL GOVERNMENT OF THE REPUBLIC OF CHINA ALLIED VICTORY U.S DOLLAR LOAN* of 1942 with serial number 0064833 payable in accordance with the regulation of October 31, 1953 with semi-annual interest at 4% per annum (see **Exhibit 2**) (herein after known as "*$20 Bond*"); and that as a point of valuation reference the combined accrued current $ 932,848.36 value of the obligations is estimated to be for:

   a) the **£20 Bond** *equal to 4.705882 troy ounces of gold or* $97.27 in 1913 Bond now valued at say 561.2966 troy ounces of gold or based upon the 1/10/12 London PM Gold Price Fixing of $1637 per ounce say $918,842.46; and then

   b) the **$20 Bond** *equal to 0.5714 troy ounces of gold or* $20.00 in 1942 Bond now valued at say 8.5558 troy ounces of gold or based upon the 1/10/12 London PM Gold Price Fixing of $1637 per ounce say $14,005.90.

5)   **Supplemental Defendant Federal Reserve Bank of New York (FRBNY) (herein after known a "Defendant FRBNY")** is a private entity located at 33 Liberty Street New York, NY 10045 Phone Tel: (212) 720-5000.

6)   Defendant FRBNY is one of 12 Federal Reserve Banks (the Fed), and that each Reserve Bank is headed by a president appointed by the Bank's nine-member board of directors. Three of the directors are elected by the commercial banks in the Bank's region that are members of the Federal Reserve System. The other directors are selected to represent the public with due consideration to the interests of agriculture,

commerce, industry, services, labor and consumers. Three of these six directors are elected by member banks and the other three are chosen by the Board of Governors.

7) The 12 Federal Reserve Banks are the operating arms of the Federal Reserve System. They supervise and regulate bank holding companies, as well as state chartered banks in their district that are members of the Federal Reserve System. Each Reserve Bank provides services to depository institutions in its respective district and functions as a fiscal agent of the U.S. government.

8) The Defendant FRBNY conducts on-site and off-site examinations of member depository institutions, and branches and agencies of foreign banks in the Second District. The Fed's responsibilities extend to all state-chartered banks that are members of the Federal Reserve System, all U.S. bank holding companies and many of the U.S. operations of foreign banking organizations. In addition, the Fed stands ready to provide temporary or long-term liquidity to any depository institution that meets its criteria for discount window borrowing.

9) International Operations of the Defendant FRBNY represents the Federal Reserve System and the U.S. Treasury, also is responsible for intervening in foreign exchange markets to achieve dollar exchange rate policy objectives and to counter disorderly conditions in foreign exchange markets. Such transactions are made in close coordination with the U.S. Treasury and Board of Governors, and most often are coordinated with the foreign exchange operations of other central banks. Dollars are sold in exchange for foreign currency if the goal is to counter upward pressure on the dollar. If the objective is to counter downward pressure, dollars are purchased through the sale of foreign currency.

10) Another responsibility of the Defendant FRBNY is to serve as fiscal agent in the United States for foreign central banks and official international financial

organizations. It acts as the primary contact with other foreign central banks. The services provided for these institutions include the receipt and payment of funds in U.S. dollars; purchase and sale of foreign exchange and Treasury securities; and the storage of monetary gold.

11) **Supplemental Defendant Lee C. Bollinger** (herein after known "President. Bollinger" "Defendant Bollinger") is a natural person appointed Chairman and President of the Board of the FRBNY through 2012 with place of business located at Federal Reserve Bank of New York 33 Liberty Street New York, NY 10045.

12) Defendant Bollinger is president of Columbia University in New York City and a member of the faculty of the Law School. He became the 19th president of Columbia University in 2002. He is a graduate of the University of Oregon and Columbia Law School, where he was an articles editor of the *Law Review*.

13) Defendant Bollinger is a Knight of the Sovereign Military Order of Malta (SMOM)[2] and a member of the New York based Council on Foreign Relations (CFR).

---

[2]   SMOM "Sovereign Military Order of Malta"– as a member of the Knights of Malta, and by virtue of a blood oath of obedience to the Pope, you are required to support to the death the desires of the head of the Order of the Knights of Malta-in this case, Pope Benedict XVI -over and above any other allegiance you may feel or pretend to feel toward any other loyalty such as a loyalty to the Constitution for the united States of America.

  Those who are presently members of the Knights of Malta must on penalty of death support those policies advocated by the Vatican. It is not hard for them to do this. They BELIEVE in these policies and principles. The polices which are espoused and proclaimed by the office of the Pope and Jesuit General at the Church of GESU are as follows:

1. End of sovereignty for the United States and other countries.
2. End of absolute property rights.
3. End of all gun rights.
4. The new international economic Order (world government).
5. The redistribution of wealth and jobs.
6. Calls for nations to trust the United Nations.
7. Total disarmament.
8. Promote the United Nations as the hope for peace.
9. Promote UNESCO, the deadly educational and cultural arm of the United Nations.
10. Promote interdependence.
11. Support sanctions honoring Father Pierre Teilhard de Chardin-the New Age Humanist Priest.
12. Support the belief that the economic principle of traditional Christian or Catholic social doctrine is the economic principle of communism.
13. Promote the Pope as the acting go-between for the United States and the Soviet Union.

14) Both the SMOM and CFR are under the Aragon Templar General Nicholas.

15) Defendant Bollinger, as with Michael I. Sovern past president of the university (1980-1993), is currently the university's Chancellor Kent Professor of Law and are CFR members. Mr. Sovern is most recently the subject of an important investigation of Columbia University student records under seal, as he was president of the institution during the years of Barack Hussein Obama II, a.k.a. Barry Soetoro, a.k.a. Soebarkah was in attendance (1981-1983) at the School of Foreign Affairs under Professor Zbigniew K. Brzezinski, also a Knight of the SMOM and inter alia National Security Advisor to the Carter Administration among others including that of Mr. Obama.

16) **Supplemental Defendant FOREIGN BONDHOLDERS PROTECTIVE COUNCIL, INC.** (herein after known as "FBPC" "Defendant FBPC") with New York Secretary of State filing number 32709 is an active Foreign Business Corporation originally formed in the State of Maryland with Dept ID#: D00103044 and incorporated in New York on February 19, 1934 with place for New York service at 90 Broad Street New York, NY 10004-2205 with the principal John R. Petty.

17) Defendant FBPC is without stock operating as a not for profit that is the surviving trade name of the forfeited [3] parent domestic corporation UNITED STATES CORPORATION not in good standing [4] of 1123 North Eutaw Street Baltimore, MD 21201 formed on 12/18/1933 with the Maryland Secretary of State.

---

[3] **Forfeited means** for a Maryland entity, its existence has been ended by the State for some delinquency. For a non-Maryland entity it means its authority to do business and legal presence here has been terminated. For a trade name it means the filing has lapsed after 5 years and not been renewed.

[4] **Good Standing  means** an entity is deemed to be in good standing if all reports, filings and penalties due THIS DEPARTMENT of the Maryland Secretary of State are up to date and paid and the entity has a valid, active resident agent. An entity may be bankrupt, under indictment, and owe taxes to state, local and federal government and yet be in good standing with this Department.

18) Further, the Defendant FBPC uses Federal I.D, Number 13-5080630 with the contact person listed as John R. Petty that also has an office located at 1402 Langley Place Mc Lean, VA 22101-3010 and 1953 Gallows Rd Ste 220 Vienna, VA 22182-3934 with telephone number 703-744-8400; and in addition has a PO BOX 2283 SEATTLE, WA 98111-2283 located in King County Washington State.

19) Furthermore, Defendant FBPC was formed under the Foreign Bondholders Act of 1933 (15 USC 77bb through 77hh with related law) [5] at the request of the United States Secretary of State, the Secretary of the Treasury and the Chairman of the Federal Trade Commission under President Franklin Roosevelt as a private, non-profit corporation to protect the rights and interests of American holders of foreign defaulted bonds. The FBPC has been involved in over 40 settlements between American bondholders and defaulted foreign governments, the most recent being Poland (1975),

---

[5]  Source: Encyclopedia of Banking & Finance (9h Edition) by Charles J Woelfel:

Under Title Ii of the Securities Act of 1933, provision was made for the creation of a Corporation of Foreign Security Holders, to be effective when the President of the United States "finds that its taking effect is in the public interest, and by proclamation so declares."  It was contemplated that the activities of the new corporation would be similar to those of the British Corporation of Foreign Bondholders, which has an official status in negotiating with foreign issuers.

The act states that the corporation shall be created "for the purpose of protecting, conserving and advancing the interests of the holders of foreign securities in default."

The secretary of State, however, advised the President that some of the foreign nations whose bonds were in default would regard the creation of such an official corporation as an unfriendly act.  In fact, Title II was not contained in the original administration draft of the Securities Act and was added on the floor of the Senate at the insistence of the late Senator Hiram Johnson of California, who had been responsible for the Senate Finance Committee's investigation of sale of foreign bonds in the United States.

Instead of the official corporation provided by the act, the unofficial FOREIGN BONDHOLDERS' PROTECTIVE COUNCIL, INC. was organized in 1933.

Hungary (1975), Bulgaria (1978), and Czechoslovakia (1984). The FBPC records are maintained in the Library Archives of Stanford University.

20) **Supplemental Defendant John R. Petty** (herein after known as "Principal of FBPC" "Mr. Petty" "FBPC Respondents" "Defendant Petty") *is a* natural person with place for New York service at 90 Broad Street New York, NY 10004-2205.

21) Defendant Petty serves as Chairman and Chief Executive Officer of TECSEC, Incorporated, a data security company. Mr. Petty served as the Chairman of Marine Midland Bank, a Partner of Lehman Brothers, and as Assistant Secretary of the U.S. Treasury. Mr. Petty is a Founder at Federal National Payables, Inc. Mr. Petty has been the Chairman of the Board of Federal National Payables, Inc., Federal National Commercial, Inc., and Federal National Services, Inc., a factoring company, since 1992. Mr. Petty has been a Director of Arris Group Inc. since 1993 and serves as its Lead Independent Director. He served as a Director of Anixter International Inc. since 1988. He served as a Member of Board of Trustees at American University of Sharjah until June 2009.

22) Defendant Petty according to http://www.namebase.org/main2/John-R-Petty.html served with the U.S. Department of State in Chile from 1970-1973 during and after the over throw of the Allende Government and in Czechoslovakia from 1991-1995 as an employee in consultation with the U.S. Treasury Department having served as an undersecretary for foreign affairs along with *Peter G. Peterson* starting with the Johnson Administration onward in other Administrations. Mr. Petty as with Mr. Peterson are current members of the Council on Foreign Relations (CFR), Knights of the Sovereign Military Order of Malta (SMOM), and are associated with the Bretton Woods Committee among other organizations with undue influence on U.S. Finance, foreign and monetary policy including the International Bilderberg Group members.

23) As relevant background as to Defendant Petty, on January 1, 1976, all previously independent Marine Banks were merged into a single Marine Midland Bank with headquarters in Buffalo. The new bank was divided into regions, with Marine Midland Bank-Western Region based in Buffalo. Marine Midland Bank became a national-chartered bank in early 1980. As it entered the 1980s, assets were close to $20 billion. In 1980 The Hong Kong and Shanghai Banking Corporation acquired a 51% shareholding in Marine Midland Bank, which it extended to full ownership in 1987. In 1994, Marine Midland acquired Spectrum Home Mortgage, which operated in eight states. Then in 1995, Marine acquired United Northern Federal Savings Bank, with branches in Watertown and Lowville, New York. Marine Midland also acquired The Hong Kong and Shanghai Banking Corporation's six New York City retail branches, and the next year Hang Seng Bank's two branches in New York City. That same year, Marine Midland acquired 11 branches from the East River Savings Bank in the New York Metropolitan area. Marine also acquired the US dollar clearing business of J P Morgan. At the same time, HSBC transferred two branches in the northwestern United States to HSBC Bank Canada. The next year, Marine completed its acquisition of First Federal Savings and Loan from Toronto-based CT Financial Services, for $620 million. First Federal Savings, headquartered in Rochester, had $7.2 billion in assets, 1,600 employees, 79 retail branches in New York State and 15 mortgage origination offices in nine states.

24) For those with the stomach to know history and what is playing out in light of the January 14, 2012 elections in Taiwan now resolved, the Jesuit General of the Aragon Templars (Society of Jesus) at his website http://www.sjweb.info/news/index.cfm?Tab=2&publang=1 stated the importance of this Chinese New Year as the "Year of the Dragon" :

"Father General will visit Sydney, Australia, for a week, beginning 17 January, the week of Chinese "New Year of the Dragon," to attend the Assembly of Major Superiors for the Asia Pacific Jesuit Conference (JCAP). He will be accompanied by the Assistant for Asia Pacific, Fr Danny Huang, and Fr Francisco Javier Álvarez, the Secretary for Social Justice and Ecology. The Provincials will consider the recent document on the "Renewal of Province Structures" and its application to Asia Pacific. "Our Provincials have already commented that this document is relevant and useful for us. They are eager to begin using the criteria it proposes in order to explore new governance arrangements in Asia Pacific," said JCAP President, Fr Mark Raper. An important question for JCAP is how to give appropriate governance support to the missions and regions. JCAP has seven Provinces and 6 Regions and its territory includes some 16 countries, and more than that number of main languages, although the normal language for Conference communications is English. Several of the Provinces are newly created in the last few years and several Regions, notably Myanmar and Timor Leste, have a growing number of young Jesuit members and are now engaged in important institution building. Yet the overall number of Jesuits in the Conference has remained the same for about 25 years. Jesuit formation is high on the agenda for the assembly, as also are the two Conference priority engagements of Migration and the Environment. In Sydney, Fr General will spend a day with members of the Australian Province, first with the Jesuits, and later will be joined by several hundred close collaborators in mission."

**Commemoration of 7 August 1814**. Father General's letter to all the Jesuit Superiors on January 1, requests that the whole Society recall the document of Pope Pius VII, *Sollicitudo omnium ecclesiarum*, of August 7, 1814, by which the Society of Jesus was restored all over the world. " I am bringing this event to your attention now because I am convinced that commemorating it can help us enter more deeply into the continuing renewal of the Society that takes place in each generation." After speaking about the committee created for this purpose and its tasks, Father General continues, "...during meetings with the Presidents of the Conferences and the Major Superiors in all the Assistancies I have asked that new studies be undertaken, especially in the regions where the Society was active at the time of the Suppression. We all need to know more about the main apostolates of the Society in the last half of the 18th century; the impact of the Suppression on Jesuits and their contemporaries as they experienced the event; what happened in the late 18th and early 19th century to the institutions and ministries that Jesuits had to leave; when and how Jesuits returned to places where the Society had previously served; and what new initiatives the Restored Society undertook, especially in the many places where it began to serve for the first time." The letter then explains the purpose of all this: "Prayerful reflection based on the historical knowledge that is or will become available can enable us to learn from the lights and shadows of our past so that we might see more clearly and embrace more generously what the Lord calls us to do in our own times."

25) Members of the SMOM and CFR are guided daily by the Aragon Templar

General Nicholas.

## BACKGROUND FOR THE SUPPLEMENT TO THE COMPLAINT

26) Intervener - Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 25 above as though set forth fully and at length herein and contends the supplemental parties and Strunk's intervention as of right with FRCvP Rule 24 (a) is done on timely motion in, in which the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede Strunk's ability to protect its interest, unless existing parties adequately represent that interest.; and furthermore, even were FRCvP Rule 24 (b) for PERMISSIVE INTERVENTION to apply instead then also Strunk is here by a timely motion, that the court may permit anyone to intervene who:  (B) has a claim or defense that shares with the main action a common question of law or fact; and as with the legal duty of the Defendant FBPC and it agents under the Foreign Bondholders Act of 1933 requires it as *a quasi governmental Agency to act on such* timely motion, as the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order; and furthermore, were *Delay or Prejudice.* In exercising its discretion, the court must consider whether the Strunk intervention will unduly delay or prejudice the adjudication of the original parties' rights or in fact assist the court in the litigation.

27) That Plaintiffs Complaint of 111 pages filed November 23, 2011 on its face is taken as true by Intervener Plaintiff and the transactions and disposition of Plaintiffs' subject property "Dragon Family Financial Instruments" or the "DFFI" as described at "The Nature of the Action and Jurisdiction" starting at page 2 with paragraph 1

through the description in paragraph 2 ending at page 9, is then discussed in detail as

further effects Strunk's property as related to the named parties from page 9

paragraph 3 through paragraph 36 on page 25.

28) The stolen DFFI asset entrusted to Plaintiff Keenan in early 2009 by the Dragon

Family, are comprised of the following quote:

"(i) Two-Hundred Forty-Nine (249) United States 1934 Series Federal Reserve

(b) Upon information and belief, between 1927 and 1938, as a
result of arrangements made between China and the United States,
the United States purchased some 50 million ounces of silver and
leased vast amounts of gold from the Nationalist Chinese
Government, known as Kuomintang. During this period, China
was partly occupied by Japanese troops and there was a fear of
China being overrun by the Japanese.

(c) Upon information and belief, in return for the precious
metals delivered by the Chinese, certificates were given pursuant.
to private agreement made between China and the United States.
These certificates became the underlying funds of the Kuomintang.

(d) Upon information and belief, following the promulgation in
1934 of the Gold Reserve Act, the law required all bullion gold
and gold coin to be surrendered to the Federal Reserve, a private
corporation that is chartered to operate as the Central Bank of the
United States and the issuer of the United States Dollar.

(e) Upon information and belief, domestically owned gold was
purchased. Foreign Gold held by the Treasury was also
surrendered to and thus leased to the Federal Reserve, which
resulted in the issuance of the series of 1934 Notes by the Federal
Reserve. These Dragon Family FRNs have never been redeemed
and, upon information and belief, the accrued interest was met by
the subsequent issue of certain 1968 series of Kennedy Bonds (see
Paragraph 2 (iii), infra) and later further issues of the 1934 series FRNs
which, upon information and belief, were issued through the period
of the Chinese civil war to assist Kuomintang operations in China
and later in Burma. These 1934 FRNs guarantee the lease
payments and helped to allow the Chinese Government to continue
financially. KEENAN has no personal knowledge as to whether
the FRN s with which he was entrusted were original or
subsequently issued Notes.

(f) Upon information and belief, this gold was documented
into accounts through the Union Bank of Switzerland, placed under
protection of the Swiss Attorney General, registered through the

Swiss National Bank: into the Bank for International Settlements ("BIS") International Collateral Combined accounts and then from within the BIS, blocked to form the Institutional Parent Registration Accounts of the Federal Reserve System.

(g) Upon information and belief, and in accordance with procedures that would be expected to occur in the event the Note Holder of record wished to redeem it, the Holder would do so by first remitting the number of the Note to the Federal Reserve with a major project or a list of projects for approval. Once the projects have been approved, the Note would be recognized and the Fed system would then make arrangements for the Note to be deposited into a bank which would provide a specific credit line, perhaps of 30% up to 80% of the face value. The Fed system would then provide immunity to the Holder to present the Note at a specific Bank where a Credit Line has been pre-arranged. Attempting to present these Notes outside this system will see the note arbitrarily denied and the illegal presenter incarcerated.

(h) Upon information and belief, in order to effectuate this process, the Notes were printed to appear as if they were not produced from official origin and bear obvious imperfections, therefore easily deniable. However, when proper procedures are followed, the number of the Note and other linking identic data allows ultimate authentication and verification through the Federal Reserve System screening process and the presenting of the Note under the immunity shield allows effective use.

(i) As of April 20, 2009, the Dragon Family had calculated the total value of these FRNs alone, with interest accrued since 1934, as approximately Nine-Hundred Sixty-Eight Billion United States Dollars ($968,000,000,000.00).

(ii) Two (2) 57th Series Japanese Government Bearer Bonds, Nos. A 1306 (construction bond) and A 1310 (the "Japanese Bonds"), which were issued on April 30, 1983 by the Ministry of Finance, Government of Japan, each having a face value of Japanese Yen Five Hundred (500) Billion, which is equivalent to an amount in excess of Nine and One-Half (9.5) Billion United States Dollars. Upon information and belief, these Japanese Bonds are but two (2) of Five Hundred (500) such Bonds owned by the Dragon Family, each having the same face value, according to a statement of Yamaguchi dated April 20, 2009 concerning the Bond History relating to these specific Japanese Bonds.

(iii) One (1) United States Kennedy Bond with a face value of One (1) Billion United States Dollars, bearing registration number APII 024068 A.

(a) As with the FRNs, KEENAN has no personal knowledge of the circumstances which gave rise to the issuance of the 'Kennedy Bond bearing registration number APII 024068 A, issued in 1998

and which had been entrusted to him by Yamaguchi on May 5, 2009. The knowledge he has obtained is based largely upon his communications with Yamaguchi including the representations made by Yamaguchi in various documents he has executed over the years in connection with his attempts on behalf of the Dragon Family to place various Kennedy Bonds into legitimate PPPs in furtherance of their objective to provide humanitarian global assistance when and where needed.

(b) In a sworn statement by Yamaguchi, dated August 4,2010, entitled "Kennedy Bond History," and which relates to the details of ten (10) other Kennedy Bonds, virtually identical to that entrusted to KEENAN in May 2009 except for the registration numbers, Yamaguchi stated that the "US government borrowed huge amount funds from the Dragon Family many years ago. The base of the lent funds from the Dragon Family to the US Government were the Gold and Silver. Therefore the US government was able to issue huge USD as currencies via FRB then." Yamaguchi proceeded to state: "We, the Dragon Family, requested some interest to the US Government on 1998 by use of some securities/certificates got expired as same as the 57th Series Japanese Government Bonds. And, we have received the Kennedy Bonds, issued in 1998, as one of the interest payments from the US Government. I recognize as my position that the Kennedy Bonds were issued by the US Government as the interest only for the Dragon Family."

( c) Upon information and belief, the Kennedy Bonds represent a series of notes printed for the purpose of creating a settlement fund for the gold and other precious metals transferred to the United States under the terms of the Green Hilton Memorial Agreement (GHMA), November 11, 1963 which was executed by, among others, President John F. Kennedy and President Soekarno, the first President of Indonesia, who had previously been entrusted with the care of the gold. Upon information and belief, these Bonds were originally issued in 1968 by way of specially denominated 1968 Kennedy Bonds, "Z" series. These bonds were not commercially negotiable, or cashable, but were redeemable through the Federal Reserve System in what was intended to be an effective, beneficial, and well-aimed program that was intended for better global development. President Soekarno was deposed in 1967 by General Suharto, thus disrupting the entire program causing a failure to institute the planned development program intended for Indonesia and the Asian region.

(d) Upon information and belief, few, if any, of the 1968 Kennedy Bonds had been used within the original 30 year period, a fact to which Yamaguchi may have been referring in his above statement. Thus, theoretically, the gold that had been lent by the Dragon Family had not been paid for and therefore had not fully transferred to the Federal

> System. Upon information and belief, this resulted in a situation where the gold was no longer being purchased at the gold price of 1963 but at the increased 1998 price. Thus, a new "A" series of bonds, which Yamaguchi may also have been describing in his statement above, were issued in 1998 reflecting that price and the old "Z" series became defunct and worthless."

29) That Strunk notes based upon review by an expert in reference to methods used above as materially germane herein that this same principle is clearly demonstrated concerning Japan's secret, post-WWII "M-Fund". The fund was a Japanese political slush fund for the benefit right-wing, "anti-communist" Japanese politicians. It was derived from the "Black Eagle Trust," backed by looted Nazi gold and established by Skull and Bonesman Secretary of War Henry Stimson and his assistant, Knight of Malta John J. McCloy, for use during the pope's Cold War Hoax. We read in *Gold Warriors: America's Secret Recovery of Yamachita's Gold* by Sterling and Peggy Seagrave (New York: VERSO, 2003), p. 9:

> "A related legal battle was that of former U.S. Deputy Attorney General Norbert Schlei, who had to fight for his survival after being stung by the U.S. Treasury Department for asking too many questions about Japan's secret M-Fund. While Schlei was indicted, prosecuted, bankrupted, and professionally ruined for trying to negotiate a financial certificate based on the M-Fund, former Secretary of State Alexander Haig – according to eyewitnesses – went to Japan and negotiated a similar certificate successfully, with the help of a personal letter from President George H. W. Bush. Why one man succeeded while the other was destroyed is a chilling story of financial collusion between Washington and Tokyo."

As a fact to support restraint of any SMOM member from shaping relief, the reason is clear: Alexander Haig was a Knight of Malta and his brother Francis, a powerful Jesuit priest; and that Haig's superior was another Knight of Malta, George H. W. Bush.

30) That according to Plaintiff Keenan as the Disclosed Principal of the Dragon Family at Complaint paragraph 13, he states quote:

> "Upon information and belief, the 1934 FRNs described, supra, at paragraph 2 (i), came under the control of the Kuomintang from whom the gold was received in return for the lease payments, and allowed the Chinese Nationalist Government in Taiwan to continue financially. Many of the FRNs were left in

Communist China when the Kuomintang had to flee to Taiwan. Further, upon information and belief, the Gold had been nationalized by the Kuomintang who moved much of the FRNs (but not all) to Taiwan, which allowed for the development of and served as the basis for the underlying wealth of Taiwan. The FRNs were good for value as they were backed by the gold and other precious metals purchased and leased by the United States government."

31) That according to Plaintiff Keenan as the Disclosed Principal of the Dragon

Family at Complaint paragraph 14, he states quote:

> "Upon information and belief, the Kuomintang appointed guardians of this Gold and the securities issued by the United States who came to be known euphemistically as the Dragon Family. The Dragon Family is, in fact, a highly secretive and informal organization that operates between old families within China and Taiwan, above the political divide of the two independent Chinese Governments. The Dragon Family abstains from public view and knowledge, but, upon information and belief, acts for the good and better benefit of the World in constant coordination with higher levels of Global Financial Organizations, in particular, the Federal Reserve System. During the course of its existence over the last century, the Dragon Family has accumulated great wealth by having provided the Federal Reserve Bank and the United States Government with asset assignments of gold and silver via certain accounts held in Switzerland, for which it has received consideration in the form of a variety of Notes, Bonds and Certificates such as those described in ~ 2 that are an Obligation of the Federal Reserve System .Upon information and belief, these Bonds have values ranging in the many Thousands of Trillions of United States Dollars, a relatively small portion of which is involved in the claims giving rise to this action. Each of these currencies, such as the DFFI involved in this action, was and remains duly registered within the Federal Reserve System and are directly verifiable by the Federal Reserve through its efficient verification system and screening process."

32) That although Plaintiffs' DFFI property does not coincide with any £20 Bond or

$20 Bond similar to Strunk's property, based upon information and belief the DFFI is

nevertheless part of the *sinking fund* or reserve created to re-pay the £20 Bond or $20

Bond denomination similar to Strunk's property when the PRC and ROC re-unite; and

therefore, the disposition of the DFFI is germane and of a direct interest to Strunk.

### AS AND FOR A FIRST SUPPLEMENTAL CAUSE OF ACTION

### (Defendants FRBNY and Lee C. Bollinger are parties to the Expropriation and Conversion under Federal Common Law and International Law)

33) Intervener-Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 32 and the Compliant filed November 23, 2011 and paragraphs 1 through 174 as if set forth herein at length omits same for brevity, in that Defendant FRBNY and Defendant Lee C. Bollinger with named Defendants are parties to the Expropriation and Conversion under Federal Common Law and international law.

34) That Defendants FRBNY and Defendant Bollinger duties and responsibilities are in part to safeguard the use of the Federal Reserve Notes (FRNs) issued as a result of the transfer of the Gold from the ROC; and

35) That the Defendant FRBNY and its agents are active interveners into the financial matters of the European Union (EU) and the European Central Bank (ECB) in that Defendants have expropriated and attempt to convert the DFFI and FRNs thereby effecting both the degree of financial intervention by Defendant FRBNY and the safety of Strunk's direct interest in the disposition of the sinking fund and or reserve from which to re-pay the historical bonds.

36) That Strunk's historical bonds involve lawful money previously recorded and presently discoverable as part of a sinking fund under a double-bookkeeping regimen used by the Defendant FRBNY and auditable by the FBPC with fiduciary duties.

37) That according to a mutually acceptable Federal Reserve Bank expert on double bookkeeping standards and procedures of the Defendant FRBNY quote:

a) "Banks are required to adhere to Generally Accepted Accounting Principles (GAAP), GAAP follows an accounting convention that lies at the heart of the double-entry bookkeeping system called Matching Principle. This principle works as follows: When a bank accepts bullion, coin, currency, checks, drafts, promissory notes, or any other similar instruments (hereinafter "instruments") from customers and deposits or records the instrument as assets, it must record offsetting liabilities that match the assets that it accepted from customers. The liabilities represent the amounts that the bank owes the customers, funds accepted from customers. In a fractional reserve banking system like the United States banking system, most of the funds advanced to borrowers (assets of the banks) are created by the banks themselves and are not merely transferred from one set of depositors to another set of borrowers."

b) "In classical economic theory, once economic exchange has moved beyond the barter stage, there are two types of money: money of exchange and money of account... With exception of customary stores of value like gold and silver, the monetary base of the economy largely consists of credit instruments.. Against this background, I conclude that the Note, despite some language about "lawful money" explained below, clearly contemplates both disbursement of funds and eventual repayment or settlement in money or account (that is, money of exchange would be welcome but is not required to repay or settle the Note)."

c) "Lawful money was the form of money of exchange that the federal government (or any state) could be required by statute to received in payment of taxes or other debts. Traditionally, as defined by Congress, lawful money only included gold, silver, and currency notes redeemable for gold or silver on demand. In a banking law context, lawful money was only those forms of money or exchange that constituted the reserves of a national bank prior to 1913."

d) "According to the Federal Reserve Bank of New York, money is anything that has value that banks and people accept as money... money does not have to be issued by the government or in any special form..".".

e) "The bookkeeping entries tend to prove that banks accept cash, checks, drafts, and promissory note/credit agreements (assets) as money deposited to create credit or checkbook money that are bank liabilities, which shows that, absent any right of setoff, banks owe money to persons who deposit money. Cash (money of exchange) is money, and credit or promissory notes (money on account) become money when banks deposit promissory notes with intent of treating them like deposits of cash. See 12 U.S.C. Section 1813 (l)(1) (definition of "deposit" under Federal Deposit Insurance Act)... the newly issued credit or money is similar or equivalent to a promissory note, which may be treated as a deposit of money...that explains that when banks grant loans, they create new money. The new money is created because a new "loan becomes a deposit, just like a paycheck does...What banks do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts.... Explains that the banks' assets and liabilities increase by the amount of the loans."

38)   That Strunk contends that in light of the facts associated with the DFFI and

FRN as well as FRBNY policy and procedures, Plaintiffs' claim against Defendants

involve money of exchange not credit involving money of account means that lawful

money was and is or probably would be disbursed by either side in a covered

transaction even using a platform of a two-side market transactions to monetize the

DFFI / FRN would be a covered transaction to be accounted for to preserve Strunk's

historic Bond sinking fund as the reserve for re-payment.

39) That during the course of its existence over the last century, the Dragon Family has accumulated great wealth by having provided the Federal Reserve Bank and the United States Government with asset assignments of gold and silver via certain accounts held in Switzerland, for which it has received consideration in the form of a variety of Notes, Bonds and Certificates such as those described in Complaint paragraph 2 that are an Obligation of Defendant FRBNY and Federal Reserve System.

40) Upon information and belief, these Bonds have values ranging in the many Thousands of Trillions of United States Dollars, a relatively small portion of which is involved in the claims giving rise to this action. Each of these currencies, such as the DFFI / FRN involved in this action, was and remains duly registered within the Federal Reserve System and are directly verifiable by the Federal Reserve through its efficient verification system and screening process.

41) That Defendant FRBNY and Defendant Lee C. Bollinger by mis-administration and neglect have placed Strunk's repayment at risk.

42) That Strunk has a direct interest in the DFFI, FRN and related funds.

### AS AND FOR A SECOND SUPPLEMENTAL CAUSE OF ACTION

**(Defendants FRBNY, Lee C. Bollinger, FBPC and John R. Petty with fiduciary duties are in breach of the quasi contract with Strunk as an American Historical Bondholder with Plaintiffs interest to maintain the sinking fund for re-payment)**

43) Intervener-Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 42 and the Compliant filed November 23, 2011 and paragraphs 1 through 249 as to conspiracy, fraud, breach of contract and replevin action as if set forth herein at length omits same for brevity, in that Defendants FRBNY, Lee C. Bollinger, FBPC and John R. Petty with fiduciary duties are in breach of the quasi contract with Strunk as an American Historical Bondholder with Plaintiffs interest to maintain the sinking fund for re-payment.

44) That according to the Chinese – US Historical Bond Expert CHENG CHUNG-

MO[6], as would apply to the  fiduciary duties of the Defendant FBPC and Defendant

FRBNY, being familiar with *Article 63 of the Act Governing Relations Between Peoples*

*Of The Taiwan Area And The Mainland Area* which states quote:

> "To the extent not contrary to the public order or good morals of the Taiwan Area,
> it shall be upheld the legal effects of any civil matter together with any right or
> obligation thereof created in the Mainland Area, prior to the coming into force of
> this Act, between any people of the Taiwan Area and Mainland Area, or between
> any two or more of the people of the Mainland Area, or between any of the people of
> the Mainland Area and any foreign national. The provisions of the preceding
> paragraph shall not apply provided that there had been laws or regulations in
> effect, prior to the coming into force of this Act, restricting the exercise or transfer
> of the rights referred to therein.

> The following debts shall not be repaid prior to national unification:

> i) Outstanding foreign currency bonds issued in the mainland prior to 1949
>    and the short-term Gold Bonds of 1949.
> ii) Various debts owed by any government bank as well as any other financial
>     institution accepting deposits before their retreat from the Mainland."

45) That according to the Chinese – US Historical Bond Expert CHENG CHUNG-MO

regarding to *Article 63 of the Act Governing Relations Between Peoples Of The Taiwan*

*Area And The Mainland Area*:

> "This act was promulgated and amended as stated above by Presidential Order
> on October 29, 2003 and implemented from March 1, 2004 by the Order of the
> Executive Yuan during my term of office as Vice President of the Republic of
> China Judicial Yuan."

> "The intent of this Act in regards to pre-1950 Chinese bonds was to reaffirm
> their Existence as defaulted foreign debt obligations of the Republic of China
> owed in the United States and elsewhere and to defer their resolution until
> national unification, "

---

[6]  Grand Justice and Vice President of the Republic of China Judicial Yuan 1999-2006, Minister
of Justice of the Republic of China 1998-1999,  and as a law professor in Taiwan and as a
visiting professor at the University of Vienna and Wisconsin. Judicial Yuan is the Republic of
China's highest judicial organ tasked with interpreting the Constitution of the Republic of China.
Holds LL.D. from the University of Vienna and worked many years as a Law Professor
including the position of Chairman of the Law Department of National Chung-Hsing University.

"These bonds referred to in Article 63 were all issued by the former Kuomintang Government of the Republic of China or were ratified by the Kuomintang government."

"Kuomintang business holdings are worth billions of US dollars as part of the "black gold" system of Kuomintang nepotism corruption and cronyism.

"The issue of defaulted pre 1950 bonds is inexorably tied to the Kuomintang and its Assets in that the Kuomintang has been the main beneficiary of that default."

"Until approximately 1991, the Kuomintang and the Government of the Republic of China were one and the same entity. With the election o f Chen Shui-bian as President of the republic of China in 2000, for the first time the Republic of China was governed by a party other than the Kuomintang and the Kuomintang entirely ceased to be an organ or agent of the state. However, the Kuomintang apparatus typified by the Kuomintang Business Management Committee retained billions of dollars of assets accumulated while the Kuomintang was an organ of the Republic of China from 1926 to 1991. It is entirely plausible that the proceeds, sinking funds, and other benefits of the pre-1950 defaulted bonds referenced in Article 63 have been retained by the Kuomintang Business Management Committee to this day. "

"While Article 63 defers overall settlement of the bonds until the issue of Mainland China is dealt with, it does not preclude legal actions for unjust enrichment against the Kuomintang which is now a non sovereign juridical entity."

46) That Strunk contends that in light of the facts associated with the DFFI and FRN, FRBNY policy and procedure as well as the Foreign Securities Act of 1933 and *Article 63 of the Act Governing Relations Between Peoples Of The Taiwan Area And The Mainland Area*, the £20 Bond or $20 Bond denomination similarly include Strunk's property and are part of the assets secured by Plaintiffs' claim against Defendants that involve money of exchange also involve *"the proceeds, sinking funds, and other benefits of the pre 1950 defaulted bonds referenced in Article 63 have been retained by the Kuomintang Business Management Committee to this day"* that reasonably would include Plaintiffs as well in such private transaction(s) with subject securities to form a two-sided market platform to monetize debt in Switzerland as a transaction defined

under what would be a pendant action with New York State's "Blue Sky Law" in New York as well as effecting eventual repayment and or the guarantee here in New York.

47) Defendants FRBNY and Defendant Lee C. Bollinger, FBPC and John R. Petty by nonfeasance are parties to fraud, breach of contract and replevin action in that the Expropriation and Conversion under Federal Common Law and international law are under there auspice.

48) That failure of Defendants FRBNY and Defendant Lee C. Bollinger, FBPC and John R. Petty to perform duties and obligations would take Strunk's property.

### AS AND FOR A THIRD SUPPLEMENTAL CAUSE OF ACTION

### (Defendants FRBNY, Lee C. Bollinger, FBPC and John R. Petty with fiduciary duties to Strunk as an American Historical Bondholder with Plaintiffs interest to maintain the sinking fund for re-payment are wasting Plaintiffs assets)

49) Intervener-Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 48 and the Compliant filed November 23, 2011 and paragraphs 1 through 249 as to fraud, breach of contract and replevin action as if set forth herein at length omitting same for brevity, in that Defendants FRBNY, Lee C. Bollinger, FBPC and John R. Petty and or their agents with fiduciary duties to Strunk as an American Historical Bondholder with Plaintiffs interest to maintain the sinking fund for re-payment are wasting Plaintiffs assets.

50) Plaintiff Keenan as Disclosed Principal of the Dragon Family admit that their relationship is identical with the Kuomintang Business Management Committee as

"the Kuomintang appointed guardians of this Gold and the securities issued by the United States who came to be known euphemistically as the Dragon Family. The Dragon Family is, in fact, a highly secretive and informal organization that operates between old families within China and Taiwan, above the political divide of the two independent Chinese Governments."

51) Based upon information and belief, The Dragon Family and Defendants seek a Two-side Market Platform in Switzerland to monetize debt obligations in association with interests of SMOM, CFR and Vatican that effects Strunk's historic bond assets.

52) That Defendants are attempting to comingle DFFI and FRN in a Two-side market platform in Switzerland to monetize EU ECB obligations with Strunk's assets.

53) Based upon information and belief there is a *Memorandum of Understanding* of August 31, 1982 between the Securities Exchange Commission of the United States and the Swiss Government regarding non-public securities trading that would investigate a Two-side market platform in Switzerland to monetize EU ECB debt obligations and or transact risk based investments effecting Strunk's assets.

54) That named Defendants have proffered an effort to utilize Plaintiffs' DFFI / FRN asset by such action involve supplement Defendants thereby effecting Strunk's assets.


**WHEREFORE**, Intervener-Plaintiff Strunk wishes a decision of the Court to:

A.  Assign a mutually acceptable special master for an accounting of the DFFI-FRN;

B.  Assign the special master the task of an accounting of the sinking fund;

C.  Assign the special master the task to scrutinize any or all Two-sided Market Platform(s) that would effect the sinking fund;

D.  Restrain any member of the SMOM and or CFR from interfering with the accounting including Lee C. Bollinger, John R. Petty and or their agents;

E.  Such other and different relief the Court deems necessary herein.

Dated:  January 19, 2012
         Brooklyn New York

                                  Christopher-Earl: Strunk in esse
                                  Self-represented without an attorney
                                  593 Vanderbilt Avenue – 281
                                  Brooklyn, New York 11238
                                  Phone – 845-901-6767
                                  Email: chris@strunk.ws

## VERIFICATION AFFIDAVIT

**STATE OF NEW YORK**   )
                         ) ss.
**COUNTY OF KINGS**      )

Accordingly, I, Christopher Earl Strunk, being duly sworn, depose and say under penalty of perjury:

I have read the foregoing Supplement to the Complaint filed November 23, 2011, and as applies to the Supplemental Parties and Three Supplement Causes of action as against Defendants in their official capacity and or individually, and in which Intervener- Plaintiff requests a preliminary Injunction with restraint of Defendants and its agents as to the accounting of the sinking fund to safeguard the guaranteed reserve to repay Strunk's American Chinese historical Bonds; and know the contents thereof apply to me by misapplication and administration of laws as a continuing injury caused by the scheme to defraud with unjust enrichment that affects Plaintiffs' and Intervener-Plaintiff along with those similarly situated; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. The grounds of my beliefs as to all matters not stated upon information and belief are as follows: 3rd parties, books and records, and personal knowledge.

_____
Christopher-Earl: Strunk

Sworn to before me
This 19 day of January 2012

_____
Notary Public

HARRY HELFENBAUM
Commissioner of Deeds
City of New York - No.5-883
Certificate Filed in Richmond County
Commission Expires June 30, 2013

**NEIL F. KEENAN et al. v. DANIELE DAL BOSCO et al. 11-cv-8500 (RJH)**

**SUPPLEMENT TO THE COMPLAINT**

# Exhibit 1



**NEIL F. KEENAN et al. v. DANIELE DAL BOSCO et al. 11-cv-8500 (RJH)**

**SUPPLEMENT TO THE COMPLAINT**

# Exhibit 2



   

   

  

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for           **11-cv-8500 (RJH)**
THE DRAGON FAMILY, citizens of foreign states,

                              Plaintiff,

-*against*-                                             AFFIDAVIT OF SERVICE

DANIELE DAL BOSCO, a citizen of a foreign state,  Et al.

                              Defendants.

------------------------------------------------------------------x

I, Edward M. Person, Jr., declare and state under penalty of perjury with 28 USC 1728. 1746

a.  Am over 18 years of age and not a party to this action.

b.  My place of business is  located at 5342 Clark Road #175 Sarasota Florida 34233.

c.  On January 24, 2012, Christopher Strunk gave me instructions to personally serve a true conformed copy
    of the Strunk's Notice of Motion to Intervene with Supporting Affidavit Exhibits and Memorandum of
    Law with the Verified Supplement to the Complaint  for the case Keenan et al. *v Bosco Et al..SDNY*
    *Case No.: 2011-8500*, for personal service upon  The Federal Reserve Bank of New York by Chairman /
    President Lee C. Bollinger.

d.  I placed one copy each in a brown envelope with the name and address of the Party with the notice
    "Urgent Legal Service" printed in the lower left corner of the envelope and sealing same.

e.  On January 24, 2012, at 4: 10 PM – I personally went to the Mailroom of Federal Reserve Bank of New
    York at 75 Liberty Street New York New York where Mr. Press received service of Federal Reserve
    Bank of New York by Chairman / President Lee C. Bollinger.

                Dated: New  York New York
                       January 24, 2012

                                                    _____
                                                    Edward M. Person, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for          **11-cv-8500 (RJH)**
THE DRAGON FAMILY, citizens of foreign states,

                                    Plaintiff,

                                                        AFFIDAVIT OF SERVICE
-against-

DANIELE DAL BOSCO, a citizen of a foreign state,  Et al.

                                    Defendants.

-----------------------------------------------------------------x

I, Edward M. Person, Jr., declare and state under penalty of perjury with 28 USC ~~1728:~~ 1746

a.  Am over 18 years of age and not a party to this action.

b.  My place of business is  located at 5342 Clark Road #175 Sarasota Florida 34233.

c.  On January 24, 2012, Christopher Strunk gave me instructions to personally serve a true conformed copy
    of the Strunk's Notice of Motion to Intervene with Supporting Affidavit Exhibits and Memorandum of
    Law with the Verified Supplement to the Complaint  for the case Keenan et al. *v Bosco Et al..SDNY*
    *Case No.: 2011-8500*, for personal service by USPS certified return receipt upon  The Foreign
    Bondholders Protective Council by John R..Petty the Principal, Ban Ki-Moon Individually and as the
    Secretary General of the United Nations and Neil F. Keenan by counsel William H. Mulligan of Bleakley
    Platt & Schmidt LLP

d.  I placed one copy each in a brown envelope with only the name and address of the defendant with the
    notice "Urgent Legal Service" printed in the lower left corner of the envelope and sealing same with a
    certified return receipt with return address of Christopher Strunk and the USPS placed proper postage.

e.  On January 24, 2012, at 5: 00 PM – I personally went to the Church Street Station Post Office where
    each envelope was deposited with the USPS for service upon Parties and or their counsel:

Foreign Bondholders Protective Council Inc,
By John R. Petty Principal
1402 LANGLEY PL
MC LEAN, VA 22101-3010
Cert RR # 70111570000107000671

William H. Mulligan Jr. Esq.
Bleakley Platt &Schmidt LLP
One North Lexington Avenue
White Plains NY 10601
Cert RR # 70111570000107000695

Ban Ki-moon idividuallya and as Secretary Generl
of the United nations
United Nations Headquarters
Room GA-1B-57
New York, New York 10017
Cert RR # 70111570000107000688

                    Dated: New  York New York
                            January 24, 2012

                                                        Edward M. Person, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for
THE DRAGON FAMILY, citizens of foreign states,

**11-cv-8500 (RJH)**

Plaintiff,

**AFFIDAVIT OF SERVICE**

-*against*-

DANIELE DAL BOSCO, a citizen of a foreign state,  Et al.

Defendants.

-----------------------------------------------------------------x

I, Edward M. Person, Jr., declare and state under penalty of perjury with 28 USC 1728. 1746

a.  Am over 18 years of age and not a party to this action.

b.  My place of business is  located at 5342 Clark Road #175 Sarasota Florida 34233.

c.  On January 24, 2012, Christopher Strunk gave me instructions to personally serve a true conformed copy
    of the Summons and Complaint filed 11/23/2011 for the case Keenan et al. *v Bosco Et al..SDNY* Case
    No.: 2011-8500, for personal service by USPS certified return receipt upon  The Foreign Bondholders
    Protective Council by John R..Petty the Principal, Ban Ki-Moon Individually and as the Secretary
    General of the United Nations.

d.  I placed one copy each in a brown envelope with only the name and address of the defendant with the
    notice "Urgent Legal Service" printed in the lower left corner of the envelope and sealing same with a
    certified return receipt with return address of Christopher Strunk and the USPS placed proper postage.

e.  On January 24, 2012, at 5: 00 PM – I personally went to the Church Street Station Post Office where
    each envelope was deposited with the USPS for service upon Parties and or their counsel:

Foreign Bondholders Protective Council Inc,
By John R. Petty Principal
1402 LANGLEY PL
MC LEAN, VA 22101-3010
Cert RR # 70111570000107000671

Ban Ki-moon individually and as Secretary General
of the United nations
United Nations Headquarters
Room GA-1B-57
New York, New York 10017
Cert RR # 70111570000107000688

Dated: New  York New York
January 24, 2012

Edward M. Person, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for          **11-cv-8500 (RJH)**
THE DRAGON FAMILY, citizens of foreign states,

                                    Plaintiff,

                                                       AFFIDAVIT OF SERVICE
-*against*-

DANIELE DAL BOSCO, a citizen of a foreign state,  Et al.

                                    Defendants.

-----------------------------------------------------------------x

I, Edward M. Person, Jr., declare and state under penalty of perjury with 28 USC ~~1728~~ *1746*

a.  Am over 18 years of age and not a party to this action.

b.  My place of business is  located at 5342 Clark Road #175 Sarasota Florida 34233.

c.  On January 24, 2012, Christopher Strunk gave me instructions to personally serve a true conformed copy
    of the Strunk's Notice of Motion to Intervene with Supporting Affidavit Exhibits and Memorandum of
    Law with the Verified Supplement to the Complaint  for the case Keenan et al. *v Bosco Et al..SDNY*
    Case No.: 2011-8500, for personal service upon  Consulate General of Switzerland.

d.  I placed one copy each in a brown envelope with the name and address of the Party with the notice
    "Urgent Legal Service" printed in the lower left corner of the envelope and sealing same.

e.  On January 24, 2012, at 2:31 PM – I personally went to the Consulate General of Switzerland at the 30th
    Floor of 633 Third Avenue New York New York where Rafaela received service for the Consulate
    General of Switzerland.

Dated: New  York New York
       January 24, 2012

                                                       Edward M. Person, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for                    **11-cv-8500 (RJH)**
THE DRAGON FAMILY, citizens of foreign states,

Plaintiff,

**AFFIDAVIT OF SERVICE**

-against-

DANIELE DAL BOSCO, a citizen of a foreign state,  Et al.

Defendants.

-----------------------------------------------------------------x

I, Edward M. Person, Jr., declare and state under penalty of perjury with 28 USC ~~1728~~: *1746*

a. Am over 18 years of age and not a party to this action.

b. My place of business is  located at 5342 Clark Road #175 Sarasota Florida 34233.

c. On January 24, 2012, Christopher Strunk gave me instructions to personally serve a true conformed copy
   of the Strunk's Notice of Motion to Intervene with Supporting Affidavit Exhibits and Memorandum of
   Law with the Verified Supplement to the Complaint  for the case Keenan et al. *v Bosco Et al..SDNY*
   *Case No.: 2011-8500*, for personal service upon Giancarlo Bruno and the World Economic Forum  USA
   Inc.

d. I placed one copy each in a brown envelope with the name and address of the Party with the notice
   "Urgent Legal Service" printed in the lower left corner of the envelope and sealing same.

e. On January 24, 2012, at 1:56 PM – I personally went to serve upon Giancarlo Bruno and the World
   Economic Forum  USA Inc. at the 17th Floor of  3 East 54th Street New York New York where Rafaela
   Caucasian 25 years old brownish hair there for Reception received service for Giancarlo Bruno and the
   World Economic Forum  USA Inc.

Dated: New  York New York
January 24, 2012

_____
Edward M. Person, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

NEIL F. KEENAN, Individually and as Agent for                    **11-cv-8500 (RJH)**
THE DRAGON FAMILY, citizens of foreign states,

Plaintiff,

**AFFIDAVIT OF SERVICE**

-against-

DANIELE DAL BOSCO, a citizen of a foreign state,  Et al.

Defendants.

------------------------------------------------------------------x

I, Edward M. Person, Jr., declare and state under penalty of perjury with  8.USC 1728. 1746

a.  Am over 18 years of age and not a party to this action.

b.  My place of business is  located at 5342 Clark Road #175 Sarasota Florida 34233.

c.  On January 24, 2012, Christopher Strunk gave me instructions to personally serve a true conformed copy of the Strunk's Notice of Motion to Intervene with Supporting Affidavit Exhibits and Memorandum of Law with the Verified Supplement to the Complaint  for the case Keenan et al. *v Bosco Et al..SDNY* Case No.: 2011-8500, for personal service upon  H.E. Ambassador Marcello Spatafora Del Consoklato Generale d'Italia a New York for the Italian Government defendants..

d.  I placed one copy each in a brown envelope with the name and address of the Party with the notice "Urgent Legal Service" printed in the lower left corner of the envelope and sealing same.

e.  On January 24, 2012, at 1:40 PM – I personally went to serve upon  H.E. Ambassador Marcello Spatafora Del Consolato Generale d'Italia a New York for the Italian Government defendants at the 690 Park Avenue New York New York where the 55 year old heavyset man bald there for Reception/Security received service for the H.E. Ambassador Marcello Spatafora Del Consolato Generale d'Italia a New York.

Dated: New York New York
January 24, 2012

Edward M. Person, Jr.