C5UTKEEC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   NEIL F. KEENAN, Individually
    and as Agent for THE DRAGON
4   FAMILY, citizens of foreign
    states,
5
                    Plaintiff,
6
            v.                            11 CV 8500 (JMF)
7
    DANIELE DAL BOSCO, et al.,
8
                    Defendants.
9
    ------------------------------x
10                                        New York, N.Y.
                                          May 30, 2012
11                                        3:30 p.m.

12  Before:

13                  HON. JESSE M. FURMAN,

14                                        District Judge

15                      APPEARANCES

16  BLEAKLEY, PLATT & SCHMIDT
        Attorneys for Plaintiff
17  BY:  WILLIAM MULLIGAN, JR.

18  CHRISTOPHER EARL STRUNK, Pro Se
        Proposed Intervenor
19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C5UTKEEC

1          (In open court)

2          DEPUTY CLERK:  Matter of Keenan versus Dal Bosco, 11

3     Civ. 8500.

4          Counsel, please state your name for the record.

5          MR. MULLIGAN:  Good afternoon, William Mulligan, Jr.,

6     member of the firm of Bleakley, Platt & Schmidt in White

7     Plains, New York, attorneys for the plaintiff.

8          THE COURT:  Good afternoon, Mr. Mulligan.

9          MR. STRUNK:  My name is Christopher Earl Strunk, I'm

10    pro se self-represented without being an attorney.  I'm a

11    proposed intervenor and I'm responding to the order of the

12    Court.

13         THE COURT:  Good afternoon, Mr. Strunk.

14         Before I get to the motion to intervene, Mr. Mulligan,

15    I read your letter.  I have reviewed the complaint.  It's an

16    unusual one.  Give me a little bit of a better sense of what

17    exactly is going on here and what the status is of your

18    efforts, if any, to serve the defendants.

19         MR. MULLIGAN:  Yes, your Honor.  Did you say you

20    perused the complaint?

21         THE COURT:  I can't claim to have read in deep care

22    every single word, but I certainly read through the complaint

23    and have I sense of what is going on.

24         MR. MULLIGAN:  Thank you, Judge.  I did the best I

25    could to satisfy the judge's request for a status report and

3

C5UTKEEC

1    condensed that on 111 pages and being as straightforward as I

2    could be.

3         Nothing has changed since, your Honor, in that I have

4    not served any of the defendants yet for a variety of reasons.

5    I'm getting reports as recently as 12:48 a.m. this morning.  I

6    still cannot locate Mr. Dal Bosco or Mr. Sale.  We believe

7    Mr. Sale is in Thailand with Defendant Dam, who was the head of

8    the OITC.

9         It's funny now being able to talk about this case

10   after 15 months.  And as one of the attorneys said to me, it

11   reads more like a screenplay than a complaint, and I said I

12   would take that as a compliment.

13        But we haven't served, Judge.  I set forth as best I

14   could the reasons why.  The primary reason is that I can't find

15   three of these guys.  We wouldn't be here if Mr. Dal Bosco

16   hadn't stolen the bonds from my client, Mr. Keenan.  And he is

17   on the run, so to speak.

18        I'm still gathering information, Judge.  I'm being as

19   straightforward as I can.  Some of it has to do with

20   jurisdictional issues.  And as the months were going by, I

21   said -- I don't want to, for instance, serve the U.N., get a

22   timetable going there.  To be frank, some defendants are going

23   to have defenses which might be more difficult to overcome than

24   others.

25        I had my eye on the 120 days.  I had my on eye on the

C5UTKEEC

last sentence in Rule 4(m) about not applying to foreign

defendants, although I realize I may be in the wrong circuit

for that.  But essentially I have come to the conclusion that

the defendants will be served to the extent that I can find

them.  I believe it is likely that I will have to amend the

complaint.  And I have never been in a situation like this.  I

never had a case like this, obviously, that I was just waiting

for things to happen.

          My client has been in Indonesia for three months.  We

communicate by Skype sometimes, otherwise by e-mail, and I am

doing the best I can to try to get this thing off the ground.

My concern as the plaintiff, and in light of Rule 4(m), I would

rather not have the case discontinued, albeit without

prejudice.  That's just an inherent defensive tactic, I don't

want to have the case discontinued.  On other hand, I'll be

honest, I may well have to amend the complaint, which will

start the ball rolling again.  I don't think I will have a

statute of limitations problem, because the essential tort here

is conversion.  I think it's three years, and I think I have

until 2013.  I'm being totally frank with you, Judge, what is

going on through my mind.

          So as I put forth in my letter, my main concern at

this point was to appeal to the Court, even though it's not

formally presented by motion or anything, by the Court or

anyone else, that -- I'm hedging, I am hedging, I admit it, but

C5UTKEEC

 1    my primary concern would be maybe to get the Court's permission

 2    to have that 120 days extended.  I realize it's been extended

 3    by 60 days by fate with the replacement, I understand that.

 4              THE COURT:  Can I stop you for a second, and I will

 5    get back to the service issues in a few minutes, but before I

 6    address those, I had one threshold question which is, as you

 7    know, the Court is required to raise sua sponte the question of

 8    subject matter jurisdiction where there's any question about

 9    it.

10              I have read that portion of your complaint with some

11    care, and I understand that you're claiming subject matter

12    jurisdiction on two grounds, and I wanted you to discuss that

13    in a little bit more detail because it's not clear to me that

14    there is subject matter jurisdiction here.  The provision of

15    the Foreign Sovereign Immunities Act that you cite has a

16    definitional provision defining what a foreign state is for the

17    purposes of the act.  You invoke federal common law, but

18    certainly don't cite any authority in support of the

19    proposition that would give rise to subject matter

20    jurisdiction.

21              MR. MULLIGAN:  Well, maybe not in the complaint, your

22    Honor, but in our research I do believe that what we have here

23    is the expropriation of United States Federal Reserve notes.

24    If you go on the Federal Reserve -- and I do believe it's

25    uniquely federal interest in that they are notes issued by the

C5UTKEEC

federal government –– withdrawn, not the federal government,
the Federal Reserve, which is not part of the government.

          And I think that given that there are perhaps $134.5
billion worth of Federal Reserve notes floating around that
have been stolen, that would be subject to the auspices of the
Federal Reserve Bank in New York, that this Court, because
there are uniquely federal interests involved in the possible
black marketing, if you will, of United States Federal Reserve
notes, that a federal court, and certainly in New York where
the Federal Reserve Bank of New York is located, would have
jurisdiction.

          one of the things I'm going after, Judge, goes to that
point.  And I can't say I have the affidavit, but I have a
draft, which I received as recently as yesterday, and in
essence, Judge, what I would be arguing, if that issue were
specifically here –– I know you raised it sua sponte, which
you're entitled to do, but the argument would be that the
Dragon family is the largest single depositor holding assets
and counter assets managed by the Federal Reserve Bank of New
York.

          Therefore, illegal use the Dragon family assets such
as gold, for which we in turn –– the "we" there, this would be
authored directly from a member of the Dragon family.  This is
one of the first direct contacts I had from this family.  It's
not to me but through my client.  He cites to and we would cite

C5UTKEEC

1    to the responsibility of the New York Fed, which is to serve as

2    the fiscal agent of the United States for foreign central banks

3    and official international financial organizations.  It acts as

4    the primary contact with other foreign central banks.  This is

5    off their web site.

6         THE COURT:  This is off the Fed's web site?

7         MR. MULLIGAN:  That part, not the proposed affidavit

8    that I was reading from.  And I said proposed, it's not signed,

9    I don't have it, but I'm being as straight as I can with you,

10   Judge.

11        I think that when pressed, if I have to brief it, that

12   I could do a better job than I'm doing right now about

13   explaining the federal common law jurisdiction.

14        THE COURT:  I think you'll have to brief that.  If you

15   would prefer to wait for that, I'm happy to let you.  I will

16   tell you I'm not -- sitting here and without doing any

17   research, I can't tell you I'm inclined to think that the fact

18   that these are Federal Reserve notes alone suffices.  Cash, I

19   have a $20 bill here, it says at the top "Federal Reserve

20   note."  It would be hard to imagine that a federal court would

21   have subject matter jurisdiction in a case involving the theft

22   of a large amount of cash, or cash regardless of how much of it

23   was involved.  So you can address it.

24        MR. MULLIGAN:  I hear you, and it's not totally

25   unexpected.  And I would also like to address the Foreign

8

C5UTKEEC

1     Sovereign Immunities Act and the commercial exception, which I

2     think would also apply here.

3            THE COURT:  Please.

4            MR. MULLIGAN:  I realize I may have a few more upon

5     information and belief allegations in my complaint than I

6     started out, but with respect to the role of the Italians --

7     and I would be happy to further that, your Honor, if you're

8     suggesting that you're putting it to me to explain or brief the

9     subject matter jurisdiction, I would like the time to do so and

10    I would be happy to do so.

11           THE COURT:  I think there's a serious question going

12    to the Court's jurisdiction, so I am going to ask you to brief

13    that.  Obviously you proffered two bases for it, you can brief

14    both of those.  I think assuming that the foreign Sovereign

15    Immunities Act gives rise to jurisdiction over Italy and

16    Italian officials that you named, I would say you should also

17    address whether that is sufficient -- whether that gives rise

18    to jurisdiction over the whole matter or just with respect to

19    those parties.

20           MR. MULLIGAN:  Certainly not all the defendants.

21           THE COURT:  So we'll talk about a timeline for that,

22    but I think you have to address that.

23           Now a related matter also going to the Court's

24    jurisdiction is the fact that the United Nations and Ban

25    Ki-moon are named as defendants here.  I think you probably

C5UTKEEC

1   know this, but under the Convention on the Privileges and

2   Immunities of the United Nations, the United Nations itself is

3   immune from "every form of legal process except insofar as any

4   particular case it has expressly waived its immunity."  I take

5   it there has been no waiver here, certainly.

6          MR. MULLIGAN:  Certainly not, your Honor.  It's an

7   uphill battle, but I don't think that you can claim sovereign

8   immunity and offer $100 million bribes, whether the U.N. or Ban

9   Ki-moon or anyone else.

10          THE COURT:  My understanding of the convention is

11   pretty basic, that the United Nations itself and Ban Ki-moon

12   may be in different positions in the sense that the United

13   Nations, I understand, is absolutely immune absent a waiver,

14   and the secretary general is immune with respect to acts

15   performed in his function as secretary general.  So there may

16   be room with respect to the secretary general that there isn't

17   with respect to the United Nations.

18          MR. MULLIGAN:  Certainly, Judge, it certainly comes as

19   no surprise that that would be the primary issue on your mind

20   and certainly on the U.N.'s mind if they were served, and that

21   will be an expected argument.

22          THE COURT:  So we will get to the schedule on that as

23   well, but I think I will have you brief the question of whether

24   there is jurisdiction with respect to those defendants and/or

25   give you a date by which you can obtain a waiver of their

C5UTKEEC

```
 1    immunity.  I find it hard to believe that would be forthcoming.
 2              MR. MULLIGAN:  I don't think that will happen.
 3              THE COURT:  So we'll get back to that.
 4              Again, before we run to the issue of service, I want
 5    to address Mr. Strunk's motion to intervene.  I understand from
 6    your letter that you oppose the motion and wanted -- well, let
 7    me hear from Mr. Strunk first what his interest is in the
 8    matter that gives rise to his motion.
 9              MR. STRUNK:  Thank you, your Honor.
10              I have been researching the post World War II
11    arrangements of the U.S. government and its relationship to the
12    Society of Jesus in particular and the role of de Chardin
13    starting back -- Father de Chardin -- starting back in 2005 for
14    someone who hired me to do a zoning study in Dutchess County
15    which ended up in the River's Keeper program.  De Chardin is
16    buried up there.  And his involvement inside China was, other
17    than finding Peking Man and writing The Phenomenology of Man,
18    he dug up graves, and he was involved with the Office of Naval
19    Intelligence in transferring large amounts of gold outside of
20    China through our submarines in 1935 in exchange for Federal
21    Reserve gold bonds, and the monies were transfer to the Federal
22    Reserve Bank on the West Coast.  So my own interest in history
23    and my ability to make money doing zoning research led me into
24    starting to research the history of the Japanese gold
25    settlements after World War II and the involvement of OSS.  I
```

C5UTKEEC

```
1    was a Vietnam veteran.

2            And I knew Stephen Solarz, who was involved in

3    removing Ferdinand Marcos from government.  I had conversations

4    with him before his death.  He was my Congressman.  So that I

5    was aware of many of the gold transfer problems and the fight

6    over where the buried gold was, and the Imelda Marcos case

7    where I saw the research, the testimony on the part of various

8    OSS officers as to the whereabouts of gold and how Imelda

9    Marcos ended up with the gold from concentration camp victims

10   in Citibank, and there was testimony on that in the late '90s.

11           So I have looked at a lot of this research, looked at

12   court testimony.  I looked at Judge Holwell's decisions on the

13   matter of which I'm a -- I own two historic gold bonds, one

14   from 1913, 20 pounds, and one from 1942, a gold-based backed

15   bond also.  And I read the complaint, I felt there were

16   weaknesses in it, and that since the Federal Reserve was an

17   essential player, its role is to oversee all of the operations

18   in the region that the theft occurred, and that I looked at the

19   agreements between the Securities and Exchange Commission and

20   the Swiss government on what I believe is an ongoing two-sided

21   platform in collateralizing the bonds by the Chinese

22   government, who are the only ones able to use the historic

23   bonds for the purposes of commercial transactions, and that I

24   believe is being done in Switzerland.

25           That was not in the report, but certainly Occam's
```

C5UTKEEC

1    razor, the only logical use of these historical bonds, which

2    they're considerable, is by the red Chinese government inside

3    Switzerland, and that for that interest -- I am interested in

4    the merging of the Taiwan government and the red Chinese

5    government under fair principles in that it appears to me it's

6    not going to happen in that the Chinese are getting both sides

7    of the coin.

8         But I intervene specifically, and I believe that my --

9    if you want to put it criticisms, bringing in the foreign bond

10   holders protection counsel is essential for any bond held by an

11   American or having to do with an American bond holder.  They

12   were set out by Congress in 1933.  They're an extension of the

13   United States corporation, which is a corporation in Maryland,

14   not properly up to date, and essentially they are the foreign

15   bond holders corporation of counsel is the front end operation

16   operating as if it were the United States corporation, which is

17   a very unusual when I start doing the research with the

18   Secretary of State in Maryland.

19        But that I feel that there are essential parties here,

20   the foreign bond holders protective counsel who have a duty

21   under treaty arrangements to essentially do an accounting for

22   the use these historical bonds and related bonds which are part

23   of the sinking fund which would guarantee payment in the event

24   that red China should come together with Taiwan I can get paid.

25   And I'm not here to get paid, I'm just here to make sure

C5UTKEEC

1    there's a level playing field and there's a proper accounting

2    of the proceeds which should be protected both by the federal

3    reserve as a party to this transaction going back to 1913

4    through 1942, and that --

5            THE COURT:  Let me stop you for a moment.  And I

6    appreciate all of this, and I appreciate your interest in this

7    matter, as your deep interest in this matter is quite evident.

8            As you may know under the law, in order to intervene

9    in the lawsuit, as opposed to just following it, you have to

10   have some kind of stake in the matter.  So to sort of simplify

11   it, what I'm not entirely understanding from your papers or

12   from your comments now is what you have riding on this other

13   than your interest in it, which I understand to be a deep one.

14   If you can briefly explain that.

15           MR. STRUNK:  To the extent that I believe that there's

16   certain mention of the protections necessary to protect the

17   sinking fund which would repay me through a two-sided platform,

18   and that they're using the bonds in order to collateralize, and

19   they don't ever -- they're there, the shadow of money, and to

20   the extent that collateralizing what would be my sinking fund,

21   I have an interest that that the portion of the Dragon family's

22   financial instruments be accounted for by the Federal Reserve,

23   and course the foreign bond holders counsel, which it's their

24   duty under U.S. law to do such.

25           And I'm here just looking out after my interests.  And

C5UTKEEC

1    I did serve who I thought were parties to this case with the

2    summons and complaint, the World Economic Forum, Dan Carlo here

3    in New York, he was duly served, the Swiss ambassador was

4    served who had to be given notice in any case that this was

5    going on in his system, and the Italian ambassador was served

6    as well as Mr. Petty and the foreign bond holders counsel and

7    the New York City -- the Federal Reserve Bank of New York along

8    with Bollinger.

9         And I have just -- I'm just interested in all these --

10    if you're going to get involved in something as complicated as

11    this, then because the Chinese have just been given a position

12    with the Federal Reserve, now not only are they using the

13    sinking fund in Switzerland, they're now coming in and using it

14    here in New York by becoming, as the Hong Kong Shanghai Bank

15    was brought in, the red Chinese bank is coming in to run our

16    banking system, and I think these matters should be put before

17    the Court.

18         THE COURT:  Thank you, Mr. Strunk.

19         Now back to you, Mr. Mulligan, I'm not going to ask

20    you to address the particular merits at the moment, but I

21    understand you oppose the motion to intervene?

22         MR. MULLIGAN:  Yes, your Honor.  I reread your order.

23    My intent, responding to your request for the information, was

24    that since there had been no return dates set, obviously since

25    I haven't served anybody yet, that I would certainly expect

C5UTKEEC

1   that I would oppose it.  And I think your Honor hit the main

2   point on the head, and I would anticipate that my argument will

3   be there's just no connection between my case and that case.

4   With all due respect to Mr. Strunk, if he wants to bring a

5   lawsuit, go ahead, but there's no connection.  I can't imagine

6   that Rule 24 would be properly invoked here.

7            THE COURT:  OK, well, I think --

8            MR. MULLIGAN:  But I really haven't briefed it all.

9            THE COURT:  I understand, and I'm going to be giving

10  you a few assignments today, one of which is to address that.

11  I think it makes sense.  You're correct, there was no return

12  date, but it makes sense today to set a briefing schedule and

13  take a brief from you and then allow Mr. Strunk an opportunity

14  to respond if he would like it.

15            That brings us to the issue of service which you

16  started to address before, and I wanted to just return to,

17  number one, can you just help me -- you have referenced the 120

18  day rule and Rule 4(m).

19            MR. MULLIGAN:  Yes, your Honor.

20            THE COURT:  I want to sort of make sure we're on the

21  same page as to who is and who isn't subject to that rule.

22            MR. MULLIGAN:  Yes, your Honor.  By my account, your

23  Honor -- and I read rule 4(m), the last sentence says what it

24  says, that the 120 day rule does not apply to essentially

25  service of process overseas, at least under 4(i) and 4(j).

C5UTKEEC

1    It's in my letter.  And I read yesterday in this circuit there

2    are plenty of cases, there was an '87 Second Circuit case, but

3    that was under the predecessor to Rule 4(m) which said that you

4    at least have to show that you tried to serve somebody.  And

5    that does seem to be the law in this circuit, and it's been

6    cited by many district courts, as opposed to law in some other

7    circuits.  And so I recognize that.

8             THE COURT:  That's good.

9             MR. MULLIGAN:  Yes.

10             THE COURT:  Let's start by figuring out who is and who

11    is not subject to 4(m).

12             MR. MULLIGAN:  Eleven of the 14 that I have that I

13    would argue -- when and if I have to, and if I have to do it

14    now I will do the best I can -- who would not be subject to the

15    120 day rule automatically would be Dal Bosco.

16             THE COURT:  Since the other group seems to be smaller,

17    why don't you identify for me who you think is subject to --

18             MR. MULLIGAN:  I would say World Economic Forum

19    U.S.A., the U.N., Ban Ki-moon.  I'm having trouble reading my

20    own writing here.

21             THE COURT:  Why not Cesare Maria Ragaglini?

22             MR. MULLIGAN:  Ragaglini I have a question mark.  I

23    think she has a residence here.

24             THE COURT:  What about Giancarlo Bruno?

25             MR. MULLIGAN:  Well, Bruno I allege, and I think he

C5UTKEEC

1    does have a residence here, so that's a possible.  I consider

2    him to be a resident of Italy, but that's an arguable point.

3              THE COURT:  OK.

4              MR. MULLIGAN:  So my eleven might be -- I have three,

5    U.N., Ban Ki-moon, Ragaglini.  If I said eleven, I probably

6    should have ten, your Honor.

7              THE COURT:  And talk to me about the OITC, what

8    exactly that is.

9              MR. MULLIGAN:  Well, that's a great question as to

10   what they are.  The addresses that they claim are in Kumphawapi

11   City in Udon Thani, Thailand, and Kampong Karmon (ph), Phnom

12   Penh, Cambodia.  There is a web sit which lists an address at

13   1133 Connecticut Avenue Northwest in Washington DC, also.

14             THE COURT:  Do you have reason to doubt that?

15             MR. MULLIGAN:  I'm just not sure, Judge, to be honest.

16   I'm not sure if that's real or not.

17             THE COURT:  OK.  Is the organization real?

18             MR. MULLIGAN:  Oh, it's real.  They have a web site.

19   I think that they're a highly questionable organization, but

20   they have certainly been around, and I stand by all the

21   allegations in my complaint concerning them.  Ray Dam, who was

22   their leader, has been in and out of jail.  He's either in

23   Cambodia or Thailand right now, to the best of my knowledge.

24   Dal Bosco, present whereabouts unknown.  Dam, not certain.

25   David Sale, unknown, but possibly in Thailand with Dal Bosco.

C5UTKEEC

1    OITC we talked about.  I do have a West End Avenue address for

2    Giancarlo Bruno.  I will speak with Mr. Strunk, I think he just

3    mentioned that he served him.  World Economic Forum U.S.A.,

4    Inc. at 3 East 54th Street.

5          Sorry, Judge, I'm not sure where I'm going.  Should I

6    run through for you what --

7          THE COURT:  By my count there are, at least according

8    to your complaint, probably five defendants who have presence

9    in the United States, if not New York:  The United Nations, Ban

10   Ki-moon, Ambassador Ragaglini, World Economic Forum and

11   Giancarlo Bruno.  I don't see how any of those five would not

12   be subject to the 120 day rule.  Do you have a different

13   position?

14         MR. MULLIGAN:  No, your Honor, I don't.

15         THE COURT:  OK.

16         MR. MULLIGAN:  I think that would be -- certainly as

17   to three of them, but looking at my notes here and my own

18   question marks, you're certainly not wrong.

19         THE COURT:  OK.  And are there others aside from those

20   five who you would conceive or acknowledge are subject to the

21   120 day rule?

22         MR. MULLIGAN:  No, I don't think so, Judge.

23         THE COURT:  Focusing on those five for the present,

24   talk about why you have not served them as of now.  And by your

25   acknowledgment, I think it is closer to 180 days at this point

C5UTKEEC

1   than 120.

2          MR. MULLIGAN:  The reasons I stated in the letter,

3   Judge, I really didn't want to initiate a piecemeal litigation

4   and have different timetables for all types of different

5   people.  We were determined to find Mr. Dal Bosco first.  We

6   haven't been able to.  I have also felt I probably will have to

7   amend the complaint, so I took the approach of let's wait,

8   let's see what happens.  And if the case is going to be

9   discontinued, I would have rather discontinued it on my own,

10  albeit that the rule also states clearly it's without

11  prejudice, and I would refile.

12         And frankly, I looked forward to coming here today, as

13  I did two months ago with Judge Holwell, so I could just get to

14  the bottom of this and see which way -- I admit, it's sort of a

15  hedge.  I would like the Court's permission to extend the time

16  so it's not discontinued, but if it's discontinued, I will

17  regroup and I will refile.  And the complaint might be amended

18  or not.  It might not be as long, a couple of defendants might

19  not be included, but this is the first opportunity I have had

20  to sort of bring it to a head, so I appreciate where you're

21  headed.

22         THE COURT:  And what steps, if any, have you taken

23  with respect to the foreign defendants to serve them?

24         MR. MULLIGAN:  I can't find three, as I said, and I

25  have not physically attempted to serve them.  Again, I have

C5UTKEEC

1    been taking a wait and see attitude to see when everything was

2    going to come together, waiting for my people to get me more

3    information on whereabouts of Dal Bosco, and when the complaint

4    is served, that everyone is served in reasonably the same

5    period of time so we don't have twelve different schedules

6    going forward.

7              THE COURT:  And what about the defendants, other than

8    those three, that is the foreign defendants that you do know

9    where they are?

10             MR. MULLIGAN:  I have not attempted to serve them,

11   Judge, straight out.

12             THE COURT:  OK.  I have to say I appreciate your

13   concern about not proceeding in a piecemeal fashion.  The flip

14   side is I'm not interested in this case remaining on the

15   Court's docket for years and years and years because you're not

16   able to locate a particular defendant and we're waiting for

17   that defendant.

18             MR. MULLIGAN:  I understand.

19             THE COURT:  I would actually rather hold you to the

20   rules and hold you to a relatively strict timetable.  And to

21   extent that you can comply with that, I will allow it to

22   proceed, and to the extent you can't, you will have to suffer

23   the consequences.  But to that end, I mean I guess I haven't

24   previously given you notice that I might dismiss as to the

25   domestic defendants pursuant to Rule 4(m) and giving you an

C5UTKEEC

1   opportunity show good cause for failure to serve them.  I am

2   happy to do that now, although in some respects I think you

3   already made your proffer.

4           MR. MULLIGAN:  I think I have.  I attempted to do that

5   in the letter.  I'm like you, I'm not into playing games with

6   this, and I'm being as straightforward I can.

7           THE COURT:  I will be straight with you, which is I

8   don't think you have showed me good cause for failure to serve

9   those defendants.  I'm happy to give you an opportunity to

10  brief that as well if you want an opportunity to show good

11  cause or persuade me that what you have said -- cite cases

12  showing me that qualifies for a good cause, but you can tell me

13  that you don't want to proceed in that fashion or you can try

14  and persuade me, but at the moment I'm not persuaded.

15          MR. MULLIGAN:  I understand that, Judge, and I don't

16  think -- I could ask for two weeks to try to persuade you, and

17  I don't think it would work because I have nothing more to tell

18  you, straight out, than what I have said either in my letter or

19  here.  So to the extent that I would ask for 60 more days, I

20  take it that would be denied.

21          THE COURT:  Correct.

22          Now let's talk about schedule with respect to the

23  foreign defendants, who I take to be there are 14 defendants

24  total, correct?

25          MR. MULLIGAN:  I think so, Judge.

C5UTKEEC

| 1 | THE COURT: So talking about nine. |
| 2 | MR. MULLIGAN: Yes. |
| 3 | THE COURT: Let's talk about how much time you need to |
| 4 | locate and serve these defendants. |
| 5 | MR. MULLIGAN: I would ask for 60 days, Judge. |
| 6 | THE COURT: OK. In your letter you talk about the |
| 7 | need to go through the Hague Conventions and have things |
| 8 | translated and so forth. I would rather give you more time if |
| 9 | you feel that more time is necessary and require you to update |
| 10 | me periodically. |
| 11 | MR. MULLIGAN: I got a little shy. |
| 12 | THE COURT: Hang on. You tell me how much time you |
| 13 | need, I will give you that time, and in the interim I will ask |
| 14 | you to update me on the steps you are taking to locate and |
| 15 | serve. I will hold you to that, and if you demonstrate |
| 16 | diligence in doing so, so be it, I will give you the time that |
| 17 | you ask for now. If you don't, then I will end up dismissing |
| 18 | for failure to prosecute and failure to serve in the time. So |
| 19 | I want you to -- |
| 20 | MR. MULLIGAN: Under Rule 4, without prejudice. |
| 21 | THE COURT: Correct. |
| 22 | I want you to be realistic. You know about more these |
| 23 | defendants than I do. Needless to say, I don't think Italy is |
| 24 | hard to locate. I don't think Silvio Berlosconi is hard to |
| 25 | locate. I don't think the Italian Financial Police are hard to |

C5UTKEEC

1    locate.  There may be practical considerations with serving

2    those entities, but you tell me.

3         MR. MULLIGAN:  I will stick with the 90 days I asked

4    for in my letter rather than the 60.

5         THE COURT:  Meaning that you're OK if I set a deadline

6    of 90 days from today to serve those defendant?

7         MR. MULLIGAN:  To serve those defendants.  And so I

8    understand, as to the domestic defendants, the case is

9    discontinued?

10        THE COURT:  I am going to dismiss as to the five

11   defendants who I believe, based on your complaint, have a

12   presence.  I'm not going to dismiss as to the United Nations

13   because I think the United Nations is in a different position,

14   and I strongly suspect that I will dismiss to them as to

15   different grounds.  But I will dismiss as to the other four

16   defendants who are subject to the 120 day rule by your

17   concession, that is Giancarlo Bruno, World Economic Forum

18   U.S.A., Cesare Maria Ragaglini and Ban Ki-moon, for failure to

19   serve within 120 days and failure to show good cause for that

20   failure.  That is pursuant to Rule 4(m), and pursuant to that

21   rule is obviously without prejudice.

22        MR. MULLIGAN:  Then the 90 days or the same thing

23   would occur with respect to the foreign defendants?

24        THE COURT:  90 days or the same thing will occur with

25   respect to the remaining defendants.  Obviously you're entitled

C5UTKEEC

1    to make a case that you have good cause to the additional time.

2    I'm going to ask you in 45 days to submit a letter to the Court

3    apprising me of what steps you have taken to locate and serve

4    the defendants to demonstrate that you are exercising due

5    diligence throughout the period, and I will expect in that

6    letter that you will have exercised due diligence in that

7    regard.

8              MR. MULLIGAN:  Yes, your Honor.

9              THE COURT:  I think that takes care of the service

10   issues.  Let's set a briefing schedule first on the motion to

11   intervene.

12             Mr. Mulligan, how much time do you need to file a

13   memorandum of law opposing the motion to intervene?

14             MR. MULLIGAN:  Could I ask for 30 days, Judge?

15             THE COURT:  30 days from -- I will give you until

16   Friday, June 29.

17             MR. MULLIGAN:  OK.

18             THE COURT:  And then Mr. Strunk, I will give you an

19   opportunity to respond to Mr. Mulligan's memorandum.  By

20   June 29 he will file memorandum with the Court and serve a copy

21   on you.  You can discuss with him how best to do that, and then

22   I will give you four weeks after that to file something in

23   response, so by July 27.

24             MR. STRUNK:  That's generous, thank you.

25             THE COURT:  So that will deal with that issue.  And

C5UTKEEC

1    then Mr. Mulligan, the last remaining issue is the question of

2    subject matter jurisdiction.  How about I give you the same

3    period of time until June 29 to file memorandum on that.

4              MR. MULLIGAN:  That's fine.

5              THE COURT:  And just so we're clear on what to address

6    in that, I would like you to address the question of whether

7    the Court has subject matter jurisdiction in general, over the

8    entire case that is, and specifically as well whether there is

9    subject matter jurisdiction with respect to the United Nations

10   in the absence of a waiver of immunity.  And if by that time

11   you are able to obtain a waiver of immunity, obviously that

12   would be one way to address that issue, but in the absence of a

13   waiver, your memorandum of law should address what the subject

14   matter jurisdiction is with respect to the United Nations.

15             Are we clear on that?

16             MR. MULLIGAN:  Yes.

17             THE COURT:  Anything else that we need to deal with?

18             MR. MULLIGAN:  On the Foreign Sovereign Immunities

19   Act, do you also want me to --

20             THE COURT:  As I understand, you are premising subject

21   matter jurisdiction for the Court on the Foreign Sovereign

22   Immunities Act and federal common law.

23             MR. MULLIGAN:  Correct.

24             THE COURT:  Your memorandum of law should address both

25   of those issues and also address specifically the question of

C5UTKEEC

1   whether there is jurisdiction over the United Nations either by

2   obtaining a waiver, or in the absence of a waiver, why the

3   absolute immunity of the United Nations doesn't deprive the

4   Court of jurisdiction.

5           MR. MULLIGAN:  OK.

6           THE COURT:  Let me give you some page limits and

7   things.  On the subject matter jurisdiction memorandum I will

8   give you up to 25 pages.  On the motion to intervene,

9   Mr. Mulligan, I will give you 20 pages.  And Mr. Strunk I will

10  give you the same 20 pages to respond, and I think that's all I

11  need to do on that front.

12          MR. MULLIGAN:  OK.

13          MR. STRUNK:  Your Honor, is that single or double?

14          THE COURT:  Double spaced.

15          MR. STRUNK:  All right.  Judge Rakoff normally

16  discussed single.

17          THE COURT:  No, I prefer double spaced, sir.

18          Then I am going schedule another conference for --

19  Mr. Strunk, you don't need to show up unless the motion to

20  intervene has been granted, but to discuss the issues of

21  service.  90 days from today would be -- why don't we set it

22  for right after Labor Day.  That gives you a few days beyond

23  the 90 days.  That is not to say that that deadline is changed,

24  but just our next appearance will be right after Labor Day.

25  September 4th at 3:00 p.m.  And again, Mr. Strunk, no need for

C5UTKEEC

1  you to appear unless your motion has been granted, but you're

2  obviously welcome, the Court is open to the public.

3          Anything further for today?

4          MR. MULLIGAN:  It occurs to me, Judge, thinking out

5  loud, in light of the dismissal as to the domestic defendants,

6  that may cause me to more seriously consider more quickly

7  filing an amended complaint, which might moot -- I will advise

8  your Honor.  Does is that sound right to you, if I amend the

9  complaint, the 120 days would start all over again, as I

10  understand?

11          THE COURT:  Well, let's take it a step at a time.  You

12  can look into that.  You're welcome to amend the complaint if

13  you like, and if, based on your research, that triggers another

14  120 days, so be it.  I don't think it moots the question of

15  subject matter jurisdiction, so that brief should be filed --

16          MR. MULLIGAN:  Understood.

17          THE COURT:  -- by the deadline that we set.

18          MR. MULLIGAN:  Understood.

19          THE COURT:  It doesn't moot the issue of intervention,

20  so that should also be filed.

21          MR. MULLIGAN:  Understood, Judge.

22          THE COURT:  It may obviously bring the defendants --

23  the five defendants who are present in this country back into

24  the matter, in which case we'll address those as we do, but I

25  think I have made it clear that I'm not interested in letting

C5UTKEEC

1    this thing linger on the Court's docket, and I expect you to

2    proceed diligently with respect to all defendants, those who

3    are subject to the 120 days and those who are not.  In that

4    regard, if you determine that filing an amended complaint

5    brings them back in it, don't assume you can wait to serve

6    those defendants simply because there are other defendants you

7    haven't located.  OK?

8              MR. MULLIGAN:  Yes, sir.

9              THE COURT:  Anything further for today?

10             MR. MULLIGAN:  I don't think so.

11             THE COURT:  Mr. Strunk, anything further?

12             MR. STRUNK:  Thank you for hearing us.

13             THE COURT:  Thank you.  We are adjourned.

14                              o0o

15

16

17

18

19

20

21

22

23

24

25